## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LESLIE S. BOSICK,         )
                                    )
        Plaintiff,     )
                                    )
      v.              )      Civil Action No. 20-1119-MN
                                    )
KILOLO KIJAKAZI,[1]    )
Acting Commissioner of Social Security,   )
                                    )
        Defendant,    )
                                    )

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Plaintiff Leslie S. Bosick ("Bosick") filed this action pursuant to 42 U.S.C. § 405(g) on August 26, 2020 against the defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). (D.I. 1) Bosick seeks judicial review of the Commissioner's May 21, 2019 final decision denying Bosick's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. Currently before the court are cross-motions for summary judgment filed by Bosick and the Commissioner.[2] (D.I. 13; D.I. 14) For the reasons set forth below, I recommend that the court DENY Bosick's motion for summary judgment (D.I. 13), and GRANT the Commissioner's cross-motion for summary judgment (D.I. 14).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted as Defendant in place of Andrew Saul.

[2] The briefing for the present motions is as follows: Bosick's opening brief (D.I. 13), the Commissioner's combined opening brief in support of the motion for summary judgment and answering brief in opposition to Bosick's motion (D.I. 15), and Bosick's answering brief in opposition to the Commissioner's motion and reply brief (D.I. 18).

## II.    BACKGROUND

### A. Procedural History

Bosick protectively filed a DIB application on February 8, 2017, alleging a disability onset date of June 14, 2013 due to knee injuries. (D.I. 10 at 144-49)  Bosick's claims were denied initially in March 2017 and again on reconsideration in June 2017.  (*Id.* at 74, 85)  At Bosick's request, an administrative law judge ("ALJ") held a hearing on May 6, 2019.  (*Id.* at 35-61)  The ALJ issued an unfavorable decision on May 21, 2019, finding that Bosick was not disabled under the Act because she could perform a reduced range of sedentary work.  (*Id.* at 23-27)  The Appeals Council subsequently denied Bosick's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (*Id.* at 7-9)

Bosick brought this civil action challenging the ALJ's decision on August 26, 2020.  (D.I. 1)  Bosick filed her pending motion for summary judgment on May 19, 2021 (D.I. 13), and the Commissioner cross-moved for summary judgment on June 11, 2021 (D.I. 14).  Briefing is now complete.

### B. Medical History

Bosick was 46 years old on December 31, 2013, her date last insured.  (D.I. 10 at 26, 62)  Bosick has a college degree and has past relevant work as a customer service representative, an elementary school teacher, and a substitute teacher.  (*Id.* at 43-44)  The ALJ found that Bosick had the following severe impairments: bilateral knee disorder, obesity, and sleep apnea.  (*Id.* at 21)  Bosick challenges the ALJ's consideration of her knee condition, the weight given to the opinions of non-examining agency physicians, and the assessment of her subjective complaints of pain.  (D.I. 13; D.I. 18)  Because Bosick does not challenge the ALJ's decision regarding her obesity and sleep apnea, the court does not address those conditions here.

2

### 1. Medical evidence

On June 14, 2013, Bosick tripped on uneven flooring and fell while she was shopping, sustaining injuries to her knees. (D.I. 10 at 44; D.I. 11 at 66) Ten days later, Bosick treated with Michael Axe, M.D., an orthopedic surgeon, for bilateral knee pain. (D.I. 11 at 66-67) Dr. Axe noted that Bosick's pain increased with bending, climbing stairs, movement, sitting, walking, and standing, and she experienced decreased mobility, limping, numbness, spasms, swelling, tingling, bruising, and weakness in her legs. (*Id.* at 66) An x-ray revealed post-ACL reconstruction in her left knee with anteromedial changes, and her right knee showed degeneration of the medial compartment following ACL reconstruction. (*Id.* at 66, 111-14) Dr. Axe indicated there was no effusion. (*Id.* at 66) He explained that she could perform activities as tolerated, and he ordered MRIs of both knees. (*Id.* at 66-67) Dr. Axe prescribed a topical gel and medication for the pain, and he suggested that they discuss bracing her legs after receiving her MRI results. (*Id.* at 67)

On July 1, 2013, Bosick visited Dr. Axe to review her MRI results, which showed mild partial tearing of her right ACL, a right lateral meniscus tear, and loss of medial and patellofemoral components indicative of degenerative arthritis with a partial radial tear of the medial meniscus in her left knee. (D.I. 11 at 68, 733-34) Dr. Axe diagnosed Bosick with a meniscus tear and degenerative arthritis of the knee, including cartilage loss under her left kneecap. (*Id.*) He discussed the possibility of an arthroscopic debridement and possible lateral release of the left knee and addressed the cartilage loss and possible meniscus tear in her right knee. (*Id.*) Dr. Axe represented that Bosick would be "totally disabled for the next 2 weeks" and recommended pool and land therapy, with the goal of improving her range of motion and strength. (*Id.*)

3

Bosick began physical therapy on July 2, 2013 to treat her bilateral knee pain, increase her strength and range of motion, and improve her gait. (D.I. 11 at 317)  Physical therapy progress notes from July 2013 indicate that Bosick benefited from the use of the knee brace, but she still experienced pain and swelling in her left knee. (D.I. 11 at 302)  Aquatic therapy helped her gain strength without pain, and her topical pain cream was effective. (*Id.*)  Bosick's range of motion and strength improved bilaterally, but her gait remained abnormal. (*Id.*)  She reported difficulty standing from a seated position, climbing stairs, repetitive standing, and walking. (*Id.*)

In mid-July 2013, Dr. Axe gave Bosick a lidocaine injection in her left knee and prescribed the use of a knee immobilizer so she would have "the ability to walk with a straight leg." (*Id.* at 69)  At the end of July, Dr. Axe noted improvement with therapy and a home stimulation unit, and he observed that she had no effusion. (*Id.* at 70)  Dr. Axe recommended reducing their visits from biweekly to once a month, and he reduced her use of the home stimulation unit from three times a day to twice a day. (*Id.*)  At Bosick's visit in August 2013, Dr. Axe noted tears in both menisci of Bosick's left knee and recommended surgical intervention to release the ligament and repair the meniscus. (*Id.* at 71)  Dr. Axe indicated that Bosick had been in the knee immobilizer for too long and she felt that she was dependent on it. (*Id.*)

On September 12, 2013, Bosick underwent surgery on her left knee for a torn meniscus. The surgery included a partial synovectomy with lysis of adhesions, a partial medial meniscectomy, chondroplasty, and lateral release. (D.I. 11 at 115-16)  The following week, Dr. Axe noted that, although Bosick experienced intermittent pain, she was responding to medication and her status had improved post-surgery. (*Id.* at 73)  He performed two aspirations on her left knee following her surgery in September 2013. (*Id.* at 73, 75)  Dr. Axe indicated that Bosick was to be considered "totally disabled" until her return visit in three weeks. (*Id.* at 75, 106-07)

4

In October 2013, Dr. Axe noted that Bosick was "tracking better," had "less effusion," and was "progressing nicely" at physical therapy. (D.I. 11 at 76)  Bosick used crutches, but Dr. Axe indicated that the physical therapist could switch her to a cane at any point. (*Id.*)  Bosick was prescribed Percocet and Voltaren gel to manage her pain. (*Id.*)  Dr. Axe emphasized a focus on improving Bosick's strength before she returned to work. (*Id.*)  Physical therapy notes from October 2013 indicate that Bosick made progress and felt better after her sessions, and she exhibited improved walking, improved tolerance for activities of daily living, and increased ability to stand. (*Id.* at 279-86)

In November 2013, Dr. Axe indicated that Bosick was able to go back to work at a "desk-type" position that would not require kneeling, squatting, or crawling. (D.I. 11 at 77)  Dr. Axe observed that Bosick could perform a straight leg raise, and he reported that she continued to attend physical therapy and take Percocet and Voltaren. (*Id.*)  During physical therapy that month, Bosick's progress report indicated that she was "making good progress towards [a] return to full function," and despite a continued deficit in knee flexion, she exhibited an improved range of motion and strength. (*Id.* at 272)  She was able to use a cane instead of crutches to ambulate at home, and her gait improved after she was fitted for a brace. (*Id.* at 268-72)

On December 11 and 27, 2013, Bosick received injections of lidocaine, Kenalog, and Supartz for pain, and Dr. Axe suggested that her discomfort would improve as she regained her strength. (D.I. 11 at 78, 80)  Dr. Axe indicated that Bosick could perform activities as tolerated. (*Id.* at 80)  Bosick mostly reported feeling better during her physical therapy sessions after receiving the injections, and she indicated that she had stopped using her cane at home. (*Id.* at 257-62)  The physical therapist noted improved movement in her patella. (*Id.* at 257)

Bosick continued to treat with Dr. Axe in 2014, following her date last insured.  She

received multiple bilateral knee injections of Supartz in January 2014. (D.I. 11 at 81-84) Bosick returned to Dr. Axe in March 2014, complaining of occasional bilateral knee pain that was worse on the left side. (*Id.* at 85-86) Dr. Axe reviewed x-rays that revealed degenerative arthritis. (*Id.*) He recommended treating the pain with medication and suggested that she might require a knee replacement in the future. (*Id.* at 86) By April 2014, Bosick described her pain as constant, aching, sharp, and throbbing. (*Id.* at 87) However, Dr. Axe suggested that Bosick had "turned the corner" with her current treatment of X2 cream and Meloxicam because it allowed her to focus on getting her strength back which, in turn, would increase her functionality. (*Id.*) He indicated that her need for a cane was up for debate, and she "certainly can return . . . to work in which she has a desk job." (*Id.* at 87, 105) In June 2014, Dr. Axe reported that Bosick continued to get better and had shown 50% improvement despite a 40.8 deficit in peak torque, down from a deficit of 49.1 in September 2013, and he anticipated that she would improve further with continued treatment. (*Id.* at 88, 746-47) He prescribed five weeks of Supartz injections and renewed her prescription for Meloxicam. (*Id.* at 89)

Bosick was discharged from physical therapy on July 18, 2014. (D.I. 11 at 203) During her treatment in June and July 2014, Bosick reported feeling better, she had an easier time performing activities of daily living, and she exhibited improved strength and walking. (*Id.* at 205-12) Although she performed a mix of land and aquatic therapy exercises between January and May 2014, her treatment no longer included aquatic exercises by June 2014. (*Id.* at 205-06)

Bosick completed her Supartz injections in September 2014, about a year after her surgery. (D.I. 11 at 95) She complained of aching, burning pain in both knees, but she did acknowledge some improvement from the injections. (*Id.*) There are no further records from Dr. Axe's office until March 2016, when Bosick presented with bilateral knee pain and swelling, and

x-rays revealed end-stage osteoarthritis in both knees.  (*Id.* at 97)  Bosick underwent a total knee replacement of her left knee on April 22, 2016.  (*Id.* at 99, 117-18)  Her physical therapy discharge notes from October 2016 indicate that Bosick had "made objective improvements with Strength, as well as shown improvements with Gait, Weight Bearing." (*Id.* at 135)

### 2.   Medical opinions

During the course of his treatment of Bosick, Dr. Axe periodically opined on her capacity to work.  Dr. Axe represented that Bosick was unable to work from July 2013 through the period following her September 2013 surgery.  (D.I. 11 at 107-10)  On October 21, 2013, Dr. Axe opined that Bosick was "totally disabled" and could do "no work" until her next office visit.  (*Id.* at 106)  The following month, Dr. Axe suggested that Bosick could not return to previous work that involved kneeling, squatting, or crawling, but he recommended that she consult with an employment counselor to find appropriate work given her age.  (*Id.* at 77)  In April 2014, Dr. Axe explained that Bosick could not squat, climb, crawl, or stoop, and could not stand or walk for more than ten minutes per hour, but he cleared her for desk duty.  (*Id.* at 105)

Dr. Michael H. Borek, D.O., a state agency physician, reviewed Bosick's medical records and performed a residual functional capacity analysis based on those written records on March 13, 2017.  (D.I. 10 at 62-72)  Dr. Borek found Bosick's statements regarding her symptoms to be partially consistent with the objective medical evidence, but he noted that surgery and physical therapy resulted in improvement to Bosick's knee pain and her ability to perform activities of daily living.  (*Id.* at 67)  He opined that she was restricted to occasionally and frequently lifting and carrying ten pounds, standing and walking for two hours in an eight-hour workday, and sitting for a total of six hours, among additional restrictions in her lower extremities.  (*Id.* at 68)  As a result, Dr. Borek opined that Bosick was not disabled and was restricted to sedentary work.

(*Id.* at 71)

State agency physician Darrin Campo, M.D. evaluated Bosick's written medical records at the reconsideration level on June 6, 2017. (D.I. 10 at 75-84)  On appeal, Bosick indicated that she had greater difficulty walking, increased pain and deterioration in her right knee, and limping on her right side. (*Id.* at 80)  Dr. Campo confirmed that Bosick exhibited an antalgic gait and limited range of motion that improved after undergoing arthroscopic surgery for a meniscal tear. (*Id.*)  Dr. Campo opined that Bosick otherwise exhibited normal lower extremity strength and sensation, and subsequent medical evidence fell outside the period of adjudication.  (*Id.*)  Consequently, Dr. Campo adopted the initial determination regarding Bosick's claim and concluded that she was not disabled.  (*Id.* at 80, 83)

### 3.  Nonmedical evidence

On February 24, 2017, Bosick completed a function report.  (D.I. 10 at 211-18)  In the report, she described how fatigue, pain, and discomfort prevent her from working because these symptoms limit her ability to sit, stand, walk, and concentrate.  (*Id.* at 211)  Bosick reported that she spends her days going to physical therapy, doing exercises, and elevating and icing her leg in addition to watching television and attending to her personal hygiene.  (*Id.* at 212)  Although she indicated that she could dress and bathe herself, she said that these tasks are difficult and painful, and she does them less frequently.  (*Id.*)  She explained that she can no longer climb stairs, do housework, or walk, stand, or sit for long periods.  (*Id.*)  Her pain interfered with her ability to sleep.  (*Id.*)  Bosick reported that she is able to prepare her own meals and drive a car, but she can only walk a few feet without the assistance of a cane.  (D.I. 10 at 213-14, 216-17)

8

## C. Hearing Before the ALJ

At the administrative hearing on May 6, 2019, Bosick represented herself.  (D.I. 10 at 37)
The ALJ carefully explained Bosick's rights and offered to postpone the hearing should Bosick

wish to seek representation.  (*Id.* at 37-38)  Specifically, the ALJ explained that "[a]

representative could help you obtain information about your claim, explain medical terms, help

protect your rights and make any request or give any notice about the proceeding before me."

(*Id.*)  Bosick was advised that some organizations offer legal representation free of charge.  (*Id.*

at 37)  Bosick was further advised that, if her claim was ultimately denied, she could appeal it on

her own or with a representative, and she could file a new application on her own or with a

representative.  (*Id.* at 39)  Bosick confirmed that she understood and agreed to proceed without

counsel.[3]  (*Id.*)

### 1.  Bosick's Testimony

Upon questioning by the ALJ, Bosick testified that she lives by herself, she drives a car,

and she has a college degree.  (D.I. 10 at 43)  She previously worked as a customer service

representative, an elementary school teacher, and a substitute teacher.  (*Id.* at 43-44)  She

stopped working in 2013 after falling and injuring her knees.  (*Id.* at 44-45)  Bosick explained

---

[3] In her brief, Bosick states, "I do not have a lawyer.  This is one of the reasons that I feel
discriminated against in this case."  (D.I. 13 at 2)  The ALJ has a heightened level of care and
responsibility to assume a more active role when the claimant is unrepresented.  *Dobrowolsky v.
Califano*, 606 F.2d 403 (3d Cir. 1979).  The ALJ did so here, informing Bosick that, "[b]ecause
you are not represented, I'll make sure that your due process rights are protected and obtain any
evidence that may be needed."  (D.I. 10 at 39)  The ALJ is not required to act as the claimant's
counsel, and "[l]ack of counsel alone is not sufficient for remand."  *Conley v. Colvin*, C.A. No.
15-722-RGA-MPT, 2016 WL 3436435, at *10 (D. Del. June 20, 2016) (citing *Domozik v.
Cohen*, 413 F.2d 5, 9 (3d Cir. 1969)).  Here, the ALJ added new evidence presented by Bosick to
her file and elicited testimony from Bosick, Bosick's mother, and the VE regarding Bosick's
impairments, the extent of those impairments on her ability to work, and her medical treatment.
(D.I. 10 at 39-60)  On these facts, the ALJ fulfilled his duty to develop the record and provide a
full and fair administrative hearing for Bosick.

that she suffered from degenerative arthritis in her knees before the fall, and she underwent surgery three months after the fall. (*Id.* at 45)  She stated that she lost the muscle in her left leg during the time between her fall and her surgery, and she could not sleep because of the severity of the pain. (*Id.*)  She tried returning to work in 2015 and 2016, but she only did occasional substitute teaching due to the swelling and pain in her legs. (*Id.* at 45-46)  She described having difficulty going up and down stairs, walking, sitting for long periods, standing, turning, getting in and out of a car, and sleeping. (*Id.* at 49)

Bosick's mother, Ms. Caldwell, also testified at the hearing before the ALJ.  Ms. Caldwell said she visited her daughter a couple times a month throughout the relevant time period and described Bosick's pain as unrelenting. (*Id.* at 52)  She represented that Bosick suffered pain from sitting in a chair, standing, walking, climbing stairs, and getting in and out of the shower, and she had seen no improvement over the course of the relevant time period. (*Id.* at 53)  Ms. Caldwell testified that she helped her daughter financially, emotionally, and spiritually during the relevant time period, recommending medications and buying things for Bosick to make her more comfortable. (*Id.*)

### 2.  Vocational Expert Testimony Before the ALJ

At the administrative hearing in May 2019, the ALJ posed the following hypothetical to vocational expert Lanell Hall ("the VE"):

> Please assume a hypothetical individual of the Claimant's age and education with the past jobs that you described.  Further assume that this individual is limited to a range of sedentary work.  The individual would require the use of an assistive device for ambulation, but would retain the use of the free hand for lifting and carrying.  The individual would be limited to occasional use of foot controls, no climbing of ropes, ladders, or scaffolds, no kneeling or crawling.  The individual would be limited to occasional climbing of ramps and stairs, occasional balancing, stooping and crouching and limited to occasional exposure to unprotected heights, moving mechanical parts, extreme temperatures, humidity and vibration.

(D.I. 10 at 55-56)  In response to the ALJ's hypothetical, the VE testified that such a hypothetical individual would be able to perform Bosick's past work as a customer complaint clerk. (*Id.* at 56)  The VE further testified that the hypothetical individual could perform the sedentary, unskilled jobs of order clerk, document preparer, and touch-up screener. (*Id.*)

The ALJ asked the VE if an employer for the customer complaint clerk position would tolerate an employee being off task due to pain. (*Id.* at 56-57)  The VE responded that, if the hypothetical individual were off task 10% or more of the day, it would preclude Bosick's past work as a customer complaint clerk and would also preclude the unskilled, sedentary positions identified. (*Id.* at 57)  The ALJ also inquired about employer tolerance for someone being absent from the workplace. (*Id.* at 59-60)  The VE responded that, if a person is absent more than one day a month or more than eight times per year, it would preclude all work. (*Id.* at 60)

### D. The ALJ's Findings

Based on the factual evidence in the record and the testimony by Bosick and the VE, the ALJ determined that Bosick was not disabled under the Act for the relevant time period from the June 14, 2013 disability onset date through the December 31, 2013 date last insured. (D.I. 10 at 27)  The ALJ found, in pertinent part:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2013.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 14, 2013 through her date last insured of December 31, 2013 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: bilateral knee disorder; obesity; and sleep apnea (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one

11

of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record . . ., through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she: required the use of an assistive device for ambulation but retained the use of the free hand for lifting and carrying; could occasionally climb ramps and stairs but needed to avoid climbing ropes, ladders or scaffolds; could occasionally balance, stoop and crouch but needed to avoid kneeling or crawling; and could have had occasional exposure to unprotected heights, moving mechanical parts, extreme temperatures, humidity, and vibration.

6. Through the date last insured, the claimant was capable of performing past relevant work as a customer complaint clerk (DOT #241.367-014, SVP 5, sedentary exertion as generally performed). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 14, 2013, the alleged onset date, through December 31, 2013, the date last insured (20 CFR 404.1520(f)).

(D.I. 10 at 21-27)

## III.   STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to determining whether substantial evidence supports the decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means enough relevant evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 687 (3d Cir. 2020) (quoting *Biestek*, 139 S.Ct. at 1154). When applying the substantial evidence standard, the court "looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The threshold for satisfying the substantial evidence standard is "not high[,]" requiring "more than a mere scintilla" of evidence. *Id.*

12

## IV.   DISCUSSION

### A. Disability Determination Process

Title II of the Act affords insurance benefits to people who contributed to the program and who have a disability. *See Pearson*, 839 F. App'x at 687 (citing 42 U.S.C. § 423(a)(1)). A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is only disabled if the impairments are so severe that they preclude a return to previous work or engagement in any other kind of substantial gainful work existing in the national economy. *Id.* at § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003). To qualify for disability insurance benefits, a claimant must establish disability prior to the date last insured. 20 C.F.R. § 404.131 (2016); *Zirnsak v. Colvin*, 777 F.3d 607, 611-12 (3d Cir. 2014).

The Commissioner must perform a five-step analysis to determine whether a person is disabled. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If the Commissioner makes a finding of disability or non-disability at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a)(4). At step one, the Commissioner determines whether the claimant is engaged in any substantial gainful activity. *See id.* § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. *See id.* § 404.1520(a)(4)(ii).

If the claimant's impairments are severe, at step three, the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any

13

gainful work. *See id.* § 404.1520(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches a listed impairment, the claimant is presumed disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See id.* § 404.1520(e).

At step four, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *See id.* § 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC "measures the most she can do despite her limitations." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (quoting 20 C.F.R. § 404.1545(a)(1)) (internal quotations and alterations omitted). The claimant bears the burden of demonstrating the inability to return to past relevant work. *See Plummer*, 186 F.3d at 428

If the claimant is unable to return to past relevant work, at step five, the Commissioner must demonstrate that the claimant's impairments do not preclude an adjustment to any other available work. *See* 20 C.F.R. § 404.1520(g); *Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* The ALJ often seeks the VE's assistance in making this finding. *See id.*

### B. Whether the ALJ's Decision is Supported by Substantial Evidence

Bosick's motion for summary judgment focuses on three overarching issues: (1) the ALJ's assessment of Bosick's functional abilities; (2) the weight given to the opinions of the

14

non-examining State agency physicians; and (3) the weight given to Bosick's subjective
complaints of pain. (D.I. 13; D.I. 18)

### 1. The ALJ's assessment of Bosick's functional abilities

Bosick argues that the ALJ erred in assessing the limitations resulting from her knee
condition, suggesting that the ALJ did not adequately consider her inability to walk without an
assistive device, her constant pain, her inability to sit or stand for lengthy periods, her extensive
need for physical therapy, and the persistence of her 41% strength deficit after the conclusion of
therapy. (D.I. 13 at 1-3)  In response, the Commissioner contends that the ALJ properly limited
Bosick to a reduced range of sedentary work and accounted for Bosick's use of a cane and other
postural limitations in the RFC analysis. (D.I. 15 at 8)

Substantial evidence supports the ALJ's assessment of Bosick's functional abilities. The
ALJ's RFC analysis expressly accounted for Bosick's use of an assistive device for walking.
(D.I. 10 at 23)  The ALJ also limited Bosick to sedentary work with additional postural and
environmental limitations based on the evidence of record regarding Bosick's limited mobility.
(*Id.*)  Sedentary work is the least demanding physical exertion category involving only
occasional walking and standing. 20 C.F.R. § 404.1567(a).  In limiting Bosick to the sedentary
category of exertion, the ALJ considered Bosick's subjective complaints of pain as well as
objective medical records and medical opinions.[4] *See Cosme v. Comm'r Soc. Sec.*, 845 F. App'x
128, 134 (3d Cir. 2021) (citing 20 C.F.R. § 404.1545(a)(3)).  The ALJ concluded that the
objective medical evidence did not support further limitations beyond those included in the RFC
because progress notes from physical therapy documented Bosick's increased range of motion

---

[4] The ALJ's consideration of Bosick's subjective complaints and the medical opinion evidence
of record is analyzed in more detail at § IV.B.2-3, *infra*.

and strength in the months following her meniscus surgery, and Bosick had no record of treatment for her knees between September 2014 and March 2016. (D.I. 10 at 24-25; D.I. 11 at 203-12, 257-62, 268-72) In view of these findings, evidence revealing a 40.8 deficit in peak torque at Bosick's left knee for an 8% improvement since her September 2013 surgery was deemed insufficient to preclude Bosick from performing a reduced range of sedentary work. (D.I. 10 at 25; D.I. 11 at 88, 746-47)

Bosick's emphasis on portions of the record that could lead to a different conclusion is not sufficient at this stage to warrant remand because there is "more than a mere scintilla" of objective medical evidence to support the ALJ's finding. *See Biestek*, 139 S. Ct. at 1154; *see also Fabian v. Saul*, 2021 WL 2685756, at *3 (W.D. Pa. June 30, 2021) ("If substantial evidence supports the ALJ's finding, it does not matter if substantial evidence also supports Plaintiff's claims." (citing *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003)). Moreover, Bosick's focus on her failure to make a full recovery or "return[ ] to full function" ignores the fact that the ALJ accounted for ongoing limitations in the RFC by restricting her to a reduced range of sedentary work. (D.I. 13 at 1, 3)

In her appeal of the ALJ's decision, Bosick focuses largely on her current symptoms and medical evidence from 2016 and 2017, proximate to her total knee replacement surgery. (D.I. 13) The ALJ considered function reports and evidence of Bosick's medications from this time period showing indicators of a more severe condition, including significant limping, a deterioration in the ability to perform activities of daily living, and medications intended to control significant symptomology. (D.I. 10 at 25) However, the ALJ noted that these reports were dated years after Bosick's date last insured and therefore fell outside of the relevant period. (*Id.*) "While evidence generated after a claimant's date last insured can shed light on [her]

16

condition during the insured period, that evidence does not necessarily compel the Commissioner to conclude that the claimant's condition during the insured period was as severe as it became after the date last insured." *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 688 (3d Cir. 2020) (citing *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014)). The lack of treatment notes or other medical evidence related to Bosick's knee condition between October 2014 and March 2016 disrupts the continuity of treatment for her condition and further distances these records from the relevant time period.

Bosick suggests that the duration of her physical therapy treatment supports a conclusion that her knee condition was debilitating. (D.I. 13 at 1-2)  But the ALJ expressly considered Bosick's physical therapy treatment notes before and after Bosick's date last insured. (D.I. 10 at 24-25)  Consistent with Bosick's treatment records, the ALJ concluded that Bosick's condition improved with physical therapy. (*Id.*; D.I. 11 at 272) (outlining Bosick's improved pain levels both at rest and during activity, increased range of motion, decreased strength deficits, and "good progress towards return to full function.").  Although she continued to experience pain, Bosick confirms that physical therapy provided some relief, explaining that she "was blessed to receive as many visits as [she] did because [she] got hurt in the middle of the year giving [her] maximum insured visits." (D.I. 13 at 4)  Consequently, the ALJ's determination regarding Bosick's functional limitations is supported by substantial evidence.

### 2.  Weight given to non-examining state agency physician opinions

Bosick alleges that the ALJ erred in giving great weight to the opinions of the non-examining state agency physicians because these physicians did not perform a physical examination before assessing her condition. (D.I. 18)  The Commissioner argues that the ALJ was entitled to rely on the opinions of the state agency physicians because they are experts in

Social Security disability evaluation, and the ALJ gave proper weight to the opinions of Dr. Axe to the extent that those opinions were consistent with the other evidence.  (D.I. 15 at 9)

Substantial evidence supports the ALJ's decision to give the opinions of the state agency physicians great weight.  State agency medical consultants and program physicians are experts in Social Security disability determinations who consider the medical evidence and make findings of fact on medical issues, including the existence and severity of the claimant's symptoms and the claimant's RFC.  SSR 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996).  Although the opinions of a state agency physician "who has never examined a patient have less probative force . . . than they would have had if the doctor had treated or examined him," the ALJ may credit the opinion of a non-examining physician if it is supported by the evidence of record, and the ALJ "may choose whom to credit" if the opinion of the treating physician conflicts with that of the state agency physician.  *Morales v. Apfel*, 225 F.3d 310, 317, 320 (3d Cir. 2000) (internal quotations omitted); *see* 20 C.F.R. § 404.1527(c)(1).

The record before the court lends support to the opinions of the non-examining state agency physicians, consistent with the ALJ's decision to assign great weight to those opinions.  (D.I. 10 at 25)  Dr. Borek's conclusion that Bosick's condition improved with surgery and physical therapy is supported by the objective medical findings discussed at § IV.B.1, *supra*.  (*Id.* at 67)  Dr. Borek's RFC proposal to restrict Bosick to lifting and carrying ten pounds, standing and walking for two hours in an eight-hour workday, and sitting for a total of six hours is likewise supported by Bosick's physical therapy records and Dr. Axe's treatment notes reporting reduced pain, improved strength and range of motion, and increased ability to perform activities of daily living.  (*Id.* at 68)  Similarly, Dr. Campo acknowledged Bosick's antalgic gait and limited range of motion, but he highlighted improvement in her condition following her

18

September 2013 surgery and observed that Bosick otherwise exhibited normal lower extremity strength and sensation. (*Id.* at 80)  The ALJ properly relied on the state agency physicians' opinions after considering the record as a whole and determining that the opinions were largely consistent with the balance of the record. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361-62 (3d Cir. 2011) (upholding ALJ's reliance on state agency consultant's RFC assessment where ALJ also considered evidence of record as a whole).

Bosick does not specifically challenge the ALJ's assignment of no weight to Dr. Axe's October 2013 opinion that Bosick was "totally disabled" or the assignment of partial weight to Dr. Axe's April 2014 opinion regarding Bosick's inability to squat, climb, crawl, stoop, or stand or walk for more than ten minutes per hour.[5]  (D.I. 10 at 25-26)  The ALJ correctly explained that decisions regarding a claimant's disability are reserved for the Commissioner. 20 C.F.R. § 404.1527(d);[6] *see Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000) ("The ultimate decision concerning the disability of a claimant is reserved for the Commissioner.").  The ALJ further noted that Dr. Axe's proposed limitations in his April 2014 opinion should not be given controlling weight because they were not wholly consistent with his own treatment notes and physical therapy records showing improvement in Bosick's condition.  (D.I. 10 at 25-26); *see Scouten v. Comm'r of Soc. Sec.*, 722 F. App'x 288, 290 (3d Cir. 2018) ("A treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial

---

[5] A recurring theme in Bosick's briefing is the allegedly subpar treatment she received from Dr. Axe. (*See, e.g.*, D.I. 13 at 3, 5-6; D.I. 18 at 3-4) (complaining of the short duration of her visits with Dr. Axe, the lack of attention given to her pain, the cursory nature and incompleteness of Dr. Axe's treatment notes, and Dr. Axe's alleged nonchalance, and accusing Dr. Axe of negligence, sloppiness, inaccuracy, and a lack of professionalism).

[6] 20 C.F.R. § 404.1527 was superseded by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017.  Because Bosick's claim was filed prior to this date, 20 C.F.R. § 404.1527 remains in effect.

evidence in [the] case record.'" (quoting 20 C.F.R. § 404.1527(c))). Accordingly, the court finds

no error in the ALJ's assessment of the medical opinion evidence.

### 3. Weight given to Bosick's subjective complaints of pain

Bosick contends that the ALJ failed to adequately consider her subjective complaints and

self-described limitations in formulating the RFC assessment. (D.I. 13) In response, the

Commissioner alleges that the ALJ reasonably found that Bosick's statements regarding her

symptoms were not entirely consistent with the medical evidence, and the court cannot properly

reweigh the evidence to reach a conclusion more favorable to Bosick. (D.I. 15 at 10)

Here, Bosick's subjective complaints are not fully supported by the record for the reasons

previously discussed at § IV.B.1, *supra*,[7] and the ALJ appropriately limited Bosick to a reduced

range of sedentary work to accommodate her complaints of pain and mobility issues. (D.I. 10 at

23-25) Bosick appears to acknowledge that the medical evidence does not support the level of

restrictions she claims to have, and she asks the court to issue a decision in her favor despite the

lack of medical evidence. (D.I. 13 at 6) ("There must be favorable decisions made for individuals

with true disabilities who lack evidence as they have injuries close to the date last insured."),

But "[a] claimant's own statements about pain or symptoms are not, by themselves, sufficient to

establish that [s]he is disabled." *Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 133 (3d Cir.

2021) (citing 20 C.F.R. § 404.1529(a)). If the ALJ finds the claimant's subjective complaints to

be inconsistent with the objective medical evidence, the ALJ may discount them. 20 C.F.R. §

404.1529(c)(4). In this case, the ALJ properly considered Bosick's subjective complaints and

found that her impairments could reasonably cause her alleged symptoms, but the statements of

---

[7] The ALJ also states that "[t]he claimant testified that she . . . lives alone, and drives a car."
(D.I. 10 at 24) These activities of daily living also lend support to the ALJ's determination that
Bosick is capable of performing a reduced range of sedentary work.

Bosick and Ms. Caldwell regarding the intensity, persistence and limiting effects of the symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (D.I. 10 at 24) This court is bound to follow the substantial evidence standard on appeal. The court cannot review the case anew and substitute its own judgment in place of the ALJ who considered the entire record in reaching his decision. *See Gaddis v. Comm'r of Soc. Sec.*, 417 F. App'x 106, 107 n.3 (3d Cir. 2011) ("Where the Commissioner's findings of fact are supported by substantial evidence, courts are bound by those findings even if they would have decided the factual inquiry differently—*i.e.*, we are not permitted to weigh the evidence or substitute our own conclusions for those of the fact-finder."). Because the ALJ's decision to discount Bosick's subjective complaints was based on consideration of the objective medical evidence and other evidence of record, substantial evidence exists to support the ALJ's determination regarding Bosick's subjective complaints. *See Hall v. Comm'r of Soc. Sec.*, 218 F. App'x 212, 215 (3d Cir. 2007) (stating that an ALJ "may reject a claimant's subjective testimony if [he] does not find it credible so long as [he] explains why [he] is rejecting the testimony.").

## V.    CONCLUSION

For the foregoing reasons, I recommend that the court DENY Bosick's motion for summary judgment (D.I. 13) and GRANT the Commissioner's cross-motion for summary judgment (D.I. 14).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right

to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006*)*; *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order In Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated:  October 15, 2021

Sherry R. Fallon
United States Magistrate Judge